Okay, we'll move to our third argument of this morning, after which we'll take a brief recess. The third case is number 22-2077, Mestek v. Lac Courte Oreilles Community Health Center. Good morning, your honors. Pause one second. Mr. Harrison. Yes, sir. Like a tennis match. We'll wait for the crowd to emerge. Okay, Mr. Harrison, good morning. Good morning. Nick Harrison for Appellant Mestek. I apologize, your honors, for my hearing disability today, and I hope it doesn't affect my voice. So, Ms. Mestek sought a judicial remedy for an injustice done to her by the managers at a clinic associated with a tribal government, the Lac Courte Oreilles tribe. She sought relief for false claims act, whistleblower retaliation, blacklisting, and interference with business. Her claims were dismissed by the district court entirely. The federal claims were dismissed on a sovereign immunity defense, tribal sovereign immunity, and the state claim was dismissed for lack of, in the discretion of the court, supplemental jurisdiction, given that the federal claims were dismissed. The difficulty with the district court's decision in dismissing the federal claims was the way the district court found the facts that were necessary to the determination of tribal sovereign immunity. In this circuit, as I'm sure your honors are well acquainted, tribal sovereign immunity is not a jurisdictional question. So, the only vehicle for finding disputed facts is the federal rules of civil procedure that we're all familiar with, which includes a method for determining a motion to dismiss where the facts are taken as true in the complaint, a motion for summary judgment where there's a chance for discovery and competing evidence before those facts are determined. If this were a jurisdictional question, there could be a less formal fact-finding procedure, a jurisdictional discovery procedure, but that's not how facts can be found in the Seventh Circuit on a sovereign immunity defense. Before you get into the arm of the tribe test, can I ask you, do you have the statutory language in front of you? For which statute, your honor? In the False Claims Act, the anti-retaliation. I have it. I'm very familiar with it. Okay. Walk me, with that text, with that statutory language in mind, as a matter of statutory text, walk me through the abrogation analysis. Understood. So, the former version of the statute, before it was amended, had the word employer in the whistleblower prohibition. In other words, no employer shall retaliate. Right. So, no, focus on it as it exists today, as it exists today in the United States Code. As it exists today, it no longer has the word employer. It never had the word person. And because of that, the initial argument made by the defendants below, which the district actually did not adopt, was that that statute didn't apply to tribes, because the tribes were not a person. And because of the amendments and the language in this provision, as distinguished from the Keaton provision of that same statute, that argument didn't prevail. So, the question is, even though that section doesn't mention tribes, which is, I assume, the key issue here, but it does essentially have a very broad universal application. It applies to not only employers and persons, but basically everyone. The question is, does that abrogate tribal sovereign immunity? Now, appellant took the position that it does, and we relied on a First Circuit case, which I mistakenly cited, and I apologize, as a D.C. Circuit case in my brief, Henry Coughlin. And that case essentially said, and the Seventh Circuit has a similar case, and I'm not sure that case name will come to me in a moment, which says magic language is not required to abrogate immunity. What is important is that the congressional intent is clear. Right. And absent that, I think that's fair enough at that level, but absent any term, Indian, Native American tribe, you have nothing like that. And so, I think the only argument you have is one that, a conclusion that would indirectly follow from the language. But I don't even know that you have that, because you don't have broad use of terms like, you know, any government. I understand Your Honor's point. And, you know, the appellate's analysis is based on this case law that says, one, no magic language is required. If the intent seems to be universal, like in the Henry Coughlin case, the bankruptcy case, where all governments were embraced in the language, this statute, I think, is even broader than that, because it isn't even limited to governments. It isn't limited to anything. It's simply limited to anyone who retaliates, any entity that retaliates. But that doesn't do it, because that isn't the inquiry that you have. You have to look at the language of the statute and be able to discern from it congressional intent to abrogate tribal sovereign immunity, and silence, you know, through the breadth of language is not enough. Well, I think Henry Coughlin is to the contrary, and I think the case, which will probably escape me, is to the contrary in the Seventh Circuit about the not, you know, not having any magic language required. If that case comes, we all mention it. But do you agree that the Supreme Court has said repeatedly that abrogations of tribal immunity need to be unequivocal? And, Your Honor, I'm having a, I had just a moment with my. I need to repeat it. I'm happy to. If you wouldn't mind. The Supreme Court has said repeatedly, magic language aside, no specific formula, but that abrogation of tribal sovereignty, tribal sovereign immunity needs to be quote unequivocal. I agree with that. Now, the key here, Your Honor, assuming that the tribe, tribe's immunity was not abrogated. That's not the end of the story in this case. And the reason is that the complaint alleges claims against individual defendants and does not allege a claim against the tribe. The tribe is not a defendant here. And there's a reason for that. If you read the, the tribal chairman is named, by the way, but it wasn't intended for the tribal chairman to be named as the tribe. So the reason for that is Ms. Meshtek wasn't the only victim of the alleged pattern of illegal conduct here. The tribe was a victim too. As the complaint alleges the facts, the tribe did not approve the illegal submission of nor did it approve for termination. Were we permitted to take a look at the tribal code of law? Yes. That extended it to LCO and CHE? No problem with taking a look at the tribal law. Tribal law is capable of being judicially noticed. The problem with the district court's decision here was what it did with that tribal law after it judicially noticed it. Just because you can judicially notice a document doesn't mean you can draw any fact inference from it. You wish the document has to establish the fact that is to be relied upon for the decision. I think we're headed to talking about STAR. But before we do that, can we just back up just a moment with me? When we're taking a look at the tribal code, now we can take a look at that. For the individual defendants, if we set Pope and STAR aside, would that immunity not stretch to cover the other defendants? Good question, Your Honor. I would say under one theory of the facts that is actually alleged in the amended complaint, the answer would be no. And that's because the complaint alleges, I think it's in the first several pages, four to six, that the center, the health center, as it was being operated, not as it was intended in the tribal code, but as it was being operated, was essentially a rogue operation of folks committing violations of federal law that the tribal government never approved and never intended. If those facts are taken as true, and it's appellant's view that there's no choice on a motion to dismiss, but to take those facts as true, then none of those defendants have immunity because the health center doesn't have immunity. The tribe does. But if the health center, getting to the arm of the tribe question, isn't actually functioning as an arm of the tribe, it may have been intended to be, but if it isn't de facto functioning that way, it doesn't get the benefit of the tribal immunity. It's analogous to, if I may go to STAR just for a second, to Medical Director STAR acting ultra-virus in terminating Ms. Mestek in retaliation in violation of federal law. His boss didn't approve that. Ms. Bay, she admitted that to Ms. Mestek. That's in the complaint. She was the liaison between STAR and the governing board. There is no evidence here, and evidence really isn't at play yet, or shouldn't be at play in this case, because we're just dealing with the facts in the complaint on a motion to dismiss. But those facts show that STAR acted ultra-virus. Bay didn't know about his action, didn't approve it. She was the go-between with the tribal board. So here, until there's some facts that are established, and they cannot be done by simply judicially noticing what the tribal governing board intended. Mr. Harrison, if I could interrupt for a moment. Please. On this, I'm baffled by your focus on this question of who signed the termination. Okay. Is there any doubt that Ms. Mestek was fired? No doubt that she was fired, in effect. She has been terminated from her employment. That's the foundation. She hasn't been allowed to return to work. She's applied several times. She has been terminated from her employment, correct? Yes, but not by the tribal governing board, to my knowledge. I understand, but you keep saying this was ultra-virus. I do. Ultra-virus acts, let's say by a corporate officer or by a government official, can be ratified, correct? They can be. There's no facts in this case to say they were. Well, she was fired. Agreed. Nobody has rehired her. And ordinarily, this kind of internal disagreement that you think should have been raised as to who got to write the letter, who got to make the decision, doesn't really create rights in people outside that governing. I'm not sure I follow your honor's reasoning. Let me ask it this way. Would immunity apply in this case, in your view, if Ms. Bay had signed the termination letter? Not if she had done it in retaliation without the board's approval. Well, that's a merits question. You think she had to have the board's approval? Well, yes. Exercising her authority as a director. Well, she wouldn't have been doing that if she had been acting in violation of federal law to retaliate. It's like an ex parte young theory, right? Authority if you're violating the law. I wouldn't say that, your honor. But I mean, what we're talking about here, I think are facts and not law in this at this stage of the case. And the error of the district court was how I determine these facts. If Ms. Bay had hypothetically made the decision to terminate Ms. Mystak, but for the very same illegal reason, to basically cover up a pattern of illegal conduct, to sort of shoot the messenger, if you will, in the whistleblower terminology, and the board was unaware, didn't approve the illegal conduct or the retaliation, that's an ultravirus act. Her job description doesn't let her do that. I don't know that ultravirus helps us all that much. Honestly, the way I see this is she's coming in, she has been terminated. There didn't seem any question about that. She's been terminated and she sued both the health community or the community health organization. Okay. But she's also sued all of these individuals in their individual and official capacity. But all of the relief that she's looking for is, it's all employment related. That is incorrect, your honor. Reinstatement, back pay, lost benefits, no future retaliation. I understand why your honor says that the district court said that, and that was an error of the district court. And the reason is, although some of the relief she seeks would fit your honor's description, she does seek, for example, a relief against future blacklisting. That blacklisting can be implemented by individuals without approval of the tribe, without using their authority as a tribal official. They can just call up someone at another employer and say, don't hire this person. Mr. Harrison, can you point us to where in the district court you made that point? Made which? The point that you wanted injunctive relief that would run against individuals, in their personal- Well, in our opposition to the motion to dismiss, we did, and by the way, our injunctive relief claims are pretty clearly stated in the amended complaint. But we also argued in the opposition to the motion to dismiss that we were seeking injunctive relief and that there were fact issues. I'm looking at page 11 of that document. Of the opposition? Yes. And what I don't see is an argument that individual injunctive relief in personal capacity needs to be considered separate. I understand, your honor. My time has expired. Shall I answer that question? So the best I can tell you, your honor, is that the way we worded it at that time in that opposition was we were trying to inform the court this was not a motion to dismiss question. It was a summary judgment question and that there were fact issues related to both injunctive relief and damages for each of the defendants as to whether sovereign immunity would apply. And we needed to be given the benefit of the proper fact-finding procedure to determine those. That's the best I can tell you. But your honor, there is one point of law that responds to your question. If I might, I'll be brief. The Supreme Court has made clear that if an issue, let's assume for the purpose of argument, your honor, is reading our opposition to not raise the question of injunctive relief clearly or immunity related to injunctive relief, let's say it wasn't raised below. The Supreme Court has said clearly that if there is an issue not raised below, but if it's a matter of well-settled law and if there would be an injustice by not hearing it, your honors, would have the ability to hear and decide that question. And I believe that would be the appropriate course here. Thank you. Thank you, Harrison. Mr. Adams, good morning. Good morning. May it please the court, I'm Andrew Adams and I'm here representing the defendant's appealees in this matter. While numerous issues have been raised on appeal, this case presents a question of whether the district court correctly applied Rule 12b-6 in determining that Mestec failed to state a claim upon which relief can be granted due to the sovereign immunity afforded by the community health center, the clinic owned and operated by the Lac Courte Oreilles band of Lake Superior Chippewa Indians. This district court's answer was correct and we respectfully ask this court to affirm that decision. With my time, I'd like to discuss two points. First, I'd like to explain why the district court correctly applied or, excuse me, concluded that the tribal defendants are immune to Mestec's suit. And second, I'd like to explain why the district court's application of Rule 12b-6 is correct. Turning to my first... Mr. Adams, before you begin, would you agree that the complaint is sufficient but for the tribal immunity defense? That it states a claim for retaliation in violation of a false claim? Your Honor, I would agree that it states that, but I would disagree that Mestec can sustain, irregardless of the immunity, she cannot sustain the claims against the individual tribal defendants because the False Claims Act under Mestec Cites to 27... I'm sorry, 31 U.S.C. 3729 sub a1, which is the QTAM provision, that can't be brought against individuals. No, that's not the QTAM provision. That is the substantive prohibition on defrauding the United States. She's suing under 3730H, correct? She brings up both statutes. Well, she says that 3729A was violated, right? Correct. But that's not my... She doesn't have to prove that it was actually violated to make her retaliation. I would agree with that, Your Honor. So I'm not trying to quibble with you about this. I just want to make sure that we're in agreement that the focus has to be on the question of tribal sovereign immunity. Yes, the question is directly focused on immunity. Turning to my first point, the tribal defendants argued in the district court concluded that they are entitled to sovereign immunity. The district court began with the general proposition that Indian tribes are sovereigns that possess sovereign immunity from suit, and such immunity can only be abrogated by Congress if Congress unequivocally expresses that purpose. Relying on Dell Muth v. Muth and Slack v. Washington Metropolitan Area Transit, the district court correctly observed that, quote, no evidence that Congress intended to remove sovereign immunity to a tribal arm under the False Claims Act's anti-retaliation provision, therefore, simple ambiguity and language is insufficient to hold the tribe or its arm liable. At page seven, that ruling is consistent with Supreme Court precedent and this court's decision in Myers v. Oneida tribe. Specific to the question of whether the clinic is an arm of the Lakota Ray Band of Lake Superior Chippewa Indians, the district court applied the Ninth Circuit's modified test or version of a test first established by the Tenth Circuit in Breakthrough Management Group. The district court concluded that four of five factors weighed in favor of concluding that the clinic is an arm of the tribe. One, the method of its creation. Two, its purpose. Three, its management structure. And four, the tribe's intent to extend its sovereign immunity to its clinic. While the district court found that the financial ties between the tribe and its clinic ambiguous, it is clear from Title 14 of the tribe's laws, which is the community health center's personnel policies and procedures and the complaint by Mestec that they do not operate in isolation from one another. And although the district court did not address the sixth factor from Breakthrough, that is whether extending tribal sovereign immunity to the entity serves the purpose of immunity. The tribe's clinic provides health care to tribal members living on or near the Lac Courte Oreilles Indian Reservation in northern Wisconsin. And this service is one of the most important services offered by the tribe to its tribal members. The district court concluded that the documents confirm a deep, long-term relationship between the community health center and the tribe at pages 11 and 12. Therefore, extending the tribe's sovereign immunity to its clinic, a tribally owned entity is consistent with the purpose of sovereign immunity. Mestec asked the court to conclude that there is a dispute about whether the tribe's clinic operated consistent with tribal law when she was terminated. But she does not argue that the matters discussed under tribal law are incorrect or present an alternative test to be applied by the district court. Moreover, she alleged that certain correspondence about operations of the tribe's clinic were forwarded to the tribal governing board. The only reasonable inference from that allegation coupled with the tribe's own law is that the tribal governing board has oversight authority for the clinic. Even Mestec's effort to obtain relief against Taylor in his official capacity as the tribal chairman evidences this oversight authority by the tribal governing board. What's your response to the point that Mr. Harrison was making on the alleged ultra-virus conduct? In other words, I heard him saying that, is it Dr. Shannon Starr? Yes. Did Dr. Starr exceeded authority in terminating the plaintiff that way? And that somehow cuts against an application of tribal sovereign immunity when somebody acts ultra-virus like that. It wasn't within Dr. Starr's authority to terminate employment. And therefore, it's not an act that would in any way be eligible for the protection of tribal sovereign immunity. That's the substance of the position. Yes, Your Honor. I would agree to that summary of Mestec's points. What's your response to it? My response to it, the first response is that I'm in agreement with Judge Hamilton that acts by individuals on an organizational chart that are lower than supervisors can be ratified. And that occurred here. And concerning ultra-virus and the arguments that Mestec is making, the only way that the ultra-virus acts stick to the wall, Your Honor, is if these individuals are violating tribal law. Mestec has not shown in any respect that they have violated the tribe's own laws. And Your Honor, I would also argue that they were waived by Mestec. They were not properly preserved for appeal. Judge Conley and his decision says unequivocally that Mestec left the last word concerning individual, official tribal immunity to the defendants. And with respect to the individual tribal defendants, Your Honor, the district court relying on Lewis v. Clark explained that aside from, quote, unspecified damages, Mestec is seeking relief that would have to come from the community health center. Putting the burden of any judgment on the tribe's health center at page 13. Therefore, it concluded that, quote, Mestec may have formalistically sued Taylor, Bay, Starr, Clicquen, and France in both their individual and official capacities, but her claims and requested relief that the real party in interest is the community health center and arm of the tribe at 14. Furthermore, this court observed that the anti-retaliation provision of the False Claims Act can only be brought against an employer, not its employees. Thus, any claim under that provision would have to be against the tribe's clinic, bolstering the district court's conclusion. Just as importantly, and really a threshold matter, the district court noted that Mestec, quote, makes no argument on the matter of sovereign immunity for the individual's individual employees and giving defendants the sole word on the issue at page 14. Mestec acknowledged the same brief, yet despite this court's clear rule that a party bears the burden to, quote, demonstrate that the arguments below adequately develop the legal basis for a claim and that the court erred in holding otherwise, end quote. That's from Krebs v. Gravely from 2021. Mestec's principal brief relied exclusively, almost exclusively, on her complaint, not her response to the motion to dismiss. Only on reply before this court did she identify a singular paragraph where she mentions in passing a distinction between damages and injunctive relief and ultravirus acts. But these conclusory, disarranged remarks are exactly the type of underdeveloped issues that this court should refuse to address. Thus, this court should not address Mestec's waived and forfeited arguments regarding sovereign immunity of the individual tribal defendants. Turning to my second point, the defendants moved under 12b-6 and the district court correctly applied that rule. Mestec argues that the district court applied the wrong standard for two primary reasons. First, she argues that the district court reviewed matters outside of the pleadings and therefore should have converted the motion to dismiss to one of summary judgment. Mr. Adams, Mestec is alleging that Starr acted outside the scope of her employment. When she fired or terminated Ms. Mestec without the health director's approval. Isn't that enough for an individual capacity claim, at least against Starr? I would disagree, Your Honor. At page 10 of Judge Conley's decision, he states that under paragraph four, while plaintiff argues that Bay simply served as a quote figurehead capacity, Bay personally signed her termination letter. In fact, that's not the facts in the complaint, right? Wasn't it Starr that signed the termination letter? Yes, but I believe the point that Judge Conley was making was that at the end of the day, it didn't matter, Your Honor. His footnote at the bottom of page 11 states, plaintiff also claims that Starr was actually the one who fired her. But even if this were true, Starr was required by the tribal code to report to the health director, Bay, on all matters regarding patient care and the supervision of medical personnel. At the end of the day, Your Honor, the ultra-virus arguments are but a distraction where Messtech is trying to grasp onto some jurisdictional basis by which either the district court or this court could review the claims. The claims are forestalled because of the sovereign immunity of the Lac Courte Oreilles Band of Lake Superior Chippewa Indians that naturally attaches to their clinic that services their tribal members on their treaty-bounded Indian reservation. And it also protects the individual tribal defendants in their official capacity. So in essence, even if Starr had signed that termination letter, they still had to, as the health director, reporting to the tribe, the governing board had to approve that decision. Yes, Your Honor. And again, to Judge Hamilton's point, we would argue that that was a ratification under tribal law that is totally permissible and it pulls the rug out from underneath any accusations of ultra-virus acts. Judge Adams, the thing that concerns me is that is the Supreme Court's decision in Lewis against Clark, which seems to leave room for individual damages claims against individual defendants who are members of a tribe. And the court says, in essence, the fact that an employee of a tribe was acting within the scope of his employment at the time he committed a tort is not on its own sufficient to bar a suit against that employee on the basis of tribal sovereign immunity. That suggests to me that individual damages claims are not barred by tribal sovereign immunity, but where we need to go or where you need to go on behalf of defendants on individual damages claims is that they're not properly suable under the retaliation claim of the False Claims Act. Several circuits have said no individual damages claims is a matter of False Claims Act law. Do you agree with that? I do agree with that, Your Honor, that False Claims Act claims, anti-retaliation claims, can only be brought against the employer. Well, I'm not sure about that with respect to injunctions, but we'll see. Certainly damages have been allowed only against the employer. So, for all the reasons I've provided and those in our brief, we respectfully ask this court to affirm the district court's decision dismissing Messtech's claims. Thank you. Thank you. Ms. Grimes, thanks to you. Mr. Harrison, your time had expired, but I'll give you one minute. Your Honor, the key here is what facts have been established and what facts are yet to be established and how do the federal rules allow them to be established? In this circuit, when sovereign immunity is not jurisdictional, this arm of the tribe five-part test, some of those parts were addressed. In fact, allegations in the amended complaint explicitly, those facts have to control until the fact-finding process is used, the correct fact-finding process. The same is true for- How would that reasoning apply, Mr. Harrison, if let's say a state police agency is allegedly operating outside the law as a rogue operation? Would that defeat state sovereign immunity against that state agency? If the facts were alleged that the operation was rogue, not sanctioned by the state, I think there would be an ultra-virus exception to sovereign immunity. What case recognizes that? That would be an extraordinary innovation under section 1983. The- I cited the Malone case in the footnote in the opposition to the motion to dismiss and a couple of other cases in that opposition. The names will escape me in the moment about ultra-virus acts being an established exception to sovereign immunity. It's a well-established rule, Your Honor. The key though, for this case, is the facts and your hypothetical of the state police, those facts of the rogue operation would have to be established and if we're in the Seventh Circuit, it would have to be established by either the allegations in the complaint or by the normal discovery and summary judgment procedure. There is no other room for that fact-finding. Thank you, Your Honors, for the time. Quite welcome, Mr. Harrison. Mr. Adams, thanks to you. We'll take the case under advisement and the court will stand in recess for 10 minutes.